### KUHL v. SCHLICHTEMEIER.

(Circuit Court of Appeals, Eighth Circuit. August 5, 1926. Rehearing Denied October 18, 1926.)

No. 7271.

1. Bills and notes ⬅⟹396—In absence of waiver, indorser of note, not in bank at which payable, held entitled to notice of dishonor (Comp. St. Neb. 1922, §§ 4707, 4719).

In view of Nebraska Negotiable Instruments Law (Comp. St. 1922, § 4707), where note was not in bank where it was payable, and of which defendant indorser was cashier, indorser was entitled to notice of dishonor, in absence of waiver thereof under section 4719.

2. Bills and notes ⬅⟹422(1)—Conduct of indorser after maturity of note and knowledge of dishonor held to waive notice of dishonor and estop him from asserting lack of notice (Comp. St. Neb. 1922, § 4719).

Conduct of indorser after maturity of note and knowledge that it was dishonored held to impliedly acknowledge his liability thereon, and induce holder to defer action, thereby waiving notice of dishonor under Nebraska Negotiable Instruments Law (Comp. St. 1922, § 4719), and estopping him to urge want of notice.

Appeal from the District Court of the United States for the District of Nebraska; J. W. Woodrough, Judge.

Suit to foreclose mortgage by the Ætna Life Insurance Company against M. J. Kuhl and others, in which defendant W. T. Schlichtemeier filed cross-petition for foreclosure of his mortgage, and moved for deficiency judgment. From a deficiency judgment for defendant Schlichtemeier against defendant M. J. Kuhl, the latter appeals. Affirmed.

M. H. Leamy, of Pierce, Neb., for appellant.

C. A. Rawls, of Plattsmouth, Neb., for appellee.

14 F.(2d)—38

Before SANBORN, Circuit Judge, and SCOTT, District Judge.

SCOTT, District Judge. This is an appeal from a judgment of the District Court for the District of Nebraska in favor of the appellee and against the appellant, in the sum of $2,937.84 deficiency, following a decree of foreclosure and the sale of the mortgaged property, and the application of the proceeds. Counsel for plaintiff in the original foreclosure suit filed its motion for a deficiency judgment against the appellant, Kuhl, one of the defendants in the foreclosure suit, which motion recited the following facts drawn from the record: That the court by decree dated October 6, 1924, awarded decree of foreclosure and judgment on the mortgage and note in the sum of $3,446.66 in favor of appellee; the sale of the mortgaged property and the reduction of the indebtedness to the sum of $2,937.84; that defendant M. J. Kuhl was an indorser on said note, and that said sum remains unsatisfied.

Appellant appeared by counsel and filed objection to the motion substantially as follows: (1) That the claim of defendant Schlichtemeier is based upon a negotiable promissory note, and that defendant Kuhl is an indorser on said note for the purpose of transfer only; (2) that the note was never presented for payment to the maker, nor demand made on defendant for payment; (3) that no notice of dishonor or nonpayment was ever served upon or given to the defendant Kuhl; (4) because there was no waiver of said notice, either expressed or implied.

The defendant filed answer to the objections, embodying numerous denials, admitting that no notice of dishonor or nonpayment was served, and alleging that no notice of dishonor was required under the provisions of the statute of Nebraska, and further pleading that defendant Kuhl had due notice of nonpayment of the note, and alleging demand of the makers when the note became due; that defendant Kuhl waived notice of presentment for payment to the original makers, and acknowledged his liability for payment subsequent to the maturity of the note; that the note was made payable at the Farmers' State Bank of Osmond, Neb., and at the time said note became due on the 2d day of January, 1923, M. J. Kuhl was the cashier of said bank, and had full knowledge as to whether or not the money for the payment of said note was in said bank; and that no money was in said bank for the payment thereof.

Testimony was taken on the issues and

thereupon the court entered the following judgment:

"Now, on this 14th day of October, A. D. 1925, this cause came on for hearing on the motion of W. T. Schlichtemeier, cross-petitioner, for judgment for deficiency against the defendants Alfred Altwine, Emma Altwine, and M. J. Kuhl, and it appearing to the court, from the records in said cause, of which the court takes due notice, and of all the evidence in support of said motion, that the entire proceeds of the sale of the mortgaged premises was the sum of $18,045; that the plaintiff, by the decree of court was adjudged to have a first lien on all mortgaged premises for the sum of $13,242.53, and the defendant and cross-petitioner Minnie Koenig, by decree of court, was adjudged to have a second lien on all the mortgaged premises for the sum of $3,469.77, and the costs of action are taxed at $343.81, leaving $988.89 for distribution among their lienholders:

"The court finds that the cross-petitioner W. T. Schlichtemeier and the cross-petitioner Ida Freeman have a third lien for the sum of $6,974.99, or for $3,446.66 and $3,528.49, respectively, which judgments and liens the court by its judgment and decree prorated according to said respective amounts. The court finds that there remains unsatisfied of said mortgage debt to the cross-petitioner W. T. Schlichtemeier the sum of $2,957.84. The court finds that the defendant and cross-petitioner M. J. Kuhl is personally liable for said deficiency.

"Wherefore it is adjudged by the court that said cross-petitioner W. T. Schlichtemeier recover from the defendant M. J. Kuhl the sum of $2,937.84, the amount of said deficiency, and execution is awarded for the same. It is hereby further ordered that the exceptions of the defendant M. J. Kuhl, taken in open court in this decree and judgment, and every part thereof, be noted and allowed.

"By the Court:

"J. W. Woodrough, Judge."

From the undisputed testimony it appears that the note in question was for $3,000, dated January 2, 1918, made by Alfred Altwine and Emma Altwine, and payable to Willie Koenig; that the note in question was indorsed in blank by Willie Koenig, and came into the ownership of M. J. Kuhl; that M. J. Kuhl indorsed the same in blank and delivered the same to T. M. Patterson for disposition; that T. M. Patterson indorsed the same in blank, and sold the same to appellee Schlichtemeier; that on December 5th, prior to the maturity of the note, Schlichtemeier mailed notice of approaching maturity to the makers; that the makers defaulted; that no notice of dishonor was ever served upon any indorser; that the note on the date of its maturity was held by Schlichtemeier in the bank of which he was an officer at Nehawka, Neb., and so remained at all times material to this controversy; that, beginning with February 16th following the maturity of the note, and continuing until July 11, 1924, certain correspondence passed between Kuhl and Schlichtemeier.

Exhibit 3 in evidence is a letter by Kuhl to Schlichtemeier, in which he says: "Yours of the 12th inst. received, with stated inclosures. I note that you would like your loan paid. I will see what I can do. Party is now trying for a larger loan. Should know soon." It is clear from the record that the "party" referred to was the then owner of the land mortgaged.

On April 7, 1923, Kuhl again wrote: "I know that you are anxious to get your note of $3,000 cleaned up. I am just in receipt of a letter from George McDonald, of Akron, Colo., who is the owner of the land, and he is trying to get a new loan. The Peters Trust Company, of Omaha, are willing to put a loan of $18,000 on the place, but Mr. McDonald is trying now to get a $20,000 loan from the Lincoln Joint-Stock Land Bank, and if he can get this latter loan he will be able to clean up all the mortgages except the last, and the party holding that would have to renew. I think that in either case, whether he accepts the $18,000 or the $20,000, that I can arrange so that you get your money out, or, if there is any difference, it would be very small. Just how soon he will know I am unable to say, but he thinks he will know within a week, but of course it might take two weeks, as the company may conclude to send an examiner to look the land over carefully. I will advise you soon as I know definitely, and, in case the loan is made, I shall want you to send your papers to this bank for collection."

Again, on December 20, 1923, Kuhl wrote Schlichtemeier:

"I did not reply to your other letter, as the renter was just getting ready to deliver the corn, so thought I would wait a few days, so that I could send you a draft for the interest. Mr. McDonald, who owns the farm, has been trying hard to make a loan, or sell or trade the place. He has several deals on, and, while I think he will eventually be able to dispose of the place, he has not done so yet. I received a telegram from Denver a few days ago, wanting to know all about the place and the loans, and I replied, so it seems

he has a deal started. I know that this deal will work out all right, and trust you will bear with him until such time that he can do something."

And again, on February 5, 1924:

"Your letter of the 1st received. A man by the name of Brumback, of York, Neb., was here last week, and he was on a deal for the McDonald farm, but do not know whether he closed a deal for it or not. I realize that your loan is due, and, since the interest is being kept up, wish that you could let the loan stand until some one can get hold of the place who will clean up the old incumbrance by making a new loan. There is more land changing hands up here now, and perhaps something will turn up that will place the matter in better condition."

And again, on April 26, 1924:

"The farm upon which you have the loan has changed hands, and one C. H. Brumback of York, Neb., now owns it, and he has rented it for cash, but does not seem willing to use any of this cash rent to pay up the interest on the first mortgage, and if there is danger of his getting another year's rent out of it, it would be to our interest to have the first mortgage foreclosed, and a receiver appointed. A Mr. Diercks was at one time interested with me in the note you hold. Please look on the back and see if he has indorsed the note. Also give me a copy of the assignment on the back of the note, made by me when it was sold. Mr. Brumback didn't get any cash yet, but has notes for $1,200 given for the cash rent of this year."

And again, on July 11, 1924:

"Your letter of the 8th received. There appears no other course open than to let the foreclosure go ahead, and Brumback will never give up possession, if force is not used. He gets this year's rent, and will get another crop if he is not forced out; so my suggestion is, let it go to foreclosure, and we will have to protect the note at the time the land is sold. I had a partner in the $3,000 note deal, and, while technically he may not be liable, morally he is, and in the event it has to be taken up, he should pay one-half.

"I am sorry that things had to go as they did. If the owner of the land was interested in keeping the interest and taxes paid, everything would work out all right; but, as it is, the present owner wont do a thing. I trust no greater costs will be made than necessary. It was my conclusion that you could wait until you were served with the summons in the foreclosure of the first mortgage, then file your answer. Brumback would no doubt take a stay, and we could then do nothing until the sale came up. If this cannot be done, or if your attorneys intend to proceed differently, it might be well for him to write me. We want to co-operate with you to bring this matter to an early conclusion.

"Yours very truly       M. J. Kuhl.

"P. S.—It looks as though the land should sell for enough to clean yours up."

Section 97 of the Negotiable Instruments Law in force in Nebraska (Comp. St. 1922, § 4707) provides: "Notice of dishonor may be given either to the party himself or to his agent in that behalf."

Section 109 of the act (Comp. St. 1922, § 4719) provides: "Notice of dishonor may be waived, either before the time of giving notice has arrived or after the omission to give due notice, and the waiver may be express or implied."

[1] It is contended by appellee that no notice of dishonor was necessary under the Nebraska statute, because the note in question was made payable at the Farmers' State Bank of Osmond, Neb., and that appellant Kuhl was cashier of that bank at the time, and knew there were no funds in the bank available for the payment of the note. We do not think the authority cited by appellant applicable, in view of section 97 of the Negotiable Instruments Law, and of the undisputed fact that the note in question was not in the bank at Osmond, Neb., but was held at Nehawka, Neb., in the bank of which Schlichtemeier was an officer. A different rule might apply, had the note been owned by the Farmers' State Bank of Osmond, Neb., for in that case it would have been the duty of Kuhl to have given notice of dishonor, and he must thereafter have taken notice of the same dishonor himself.

[2] We think the case must necessarily turn upon a question of waiver and estoppel. The question is: Did Kuhl, after the maturity of the note, and after he knew it had been dishonored, impliedly acknowledge his liability thereon, and did he by his conduct induce Schlichtemeier to stand by and defer action in circumstances calculated to lead Schlichtemeier to believe that he (Kuhl) expected to and would pay the note? Taking into consideration the entire circumstances of the case, and the statements and representations in the letters written by Kuhl, we are constrained to the conclusion that the trial court was correct in its finding, and that Kuhl is estopped in the light of his correspondence to urge want of notice of dishonor.

It therefore follows that the case should be and is affirmed.